2004 ND 36

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Ryan Dean UTVICK, Defendant and Appellee.**

**No. 20030103.**

Supreme Court of North Dakota.

Feb. 25, 2004.

Mark Rainer Boening, Assistant State's Attorney, and Birch Peterson Burdick, State's Attorney (argued), Fargo, N.D., for plaintiff and appellant.

Steven M. Light and Lindsey D. Haugen (argued) of Larivee & Light, Grand Forks, N.D., for defendant and appellee.

NEUMANN, Justice.

[¶ 1] The State appeals from a trial court decision granting Ryan Utvick's motion to suppress evidence. We reverse and remand, concluding the trial court erred in determining the good-faith exception to the exclusionary rule did not apply and improperly granted Utvick's motion to suppress evidence.

I

[¶ 2] On July 8, 2002, Fargo police officer Glen Hanson applied for a no-knock search warrant to search a hotel room registered to Utvick. He believed Utvick's hotel room contained methamphetamine, marijuana, drug paraphernalia and items indicating Utvick was selling drugs. In his search warrant application with a supporting affidavit, Officer Hanson alleged drug use with the possibility of gun possession would jeopardize officer safety, if officers were required to announce their presence before entering the room. Officer Hanson also stated he believed contraband might be destroyed if the officers announced their presence. Based on those reasons, Officer Hanson requested a no-knock search warrant. Officer Hanson further supported his request by articulating his belief that proving ownership of contraband would also be easier if officers were not required to knock and announce their presence. Officer Hanson alleged he and hotel employees smelled a marijuana-

like odor emanating from Utvick's hotel room on July 8, 2002. Officer Hanson also listed several prior incidents involving Utvick at other hotels in Fargo. In May 2002, a hotel cleaning crew entered a room Utvick had recently vacated. The cleaning crew found drug paraphernalia including numerous pieces of burned tin foil, a straw used to snort powdered drugs, empty baggies containing small amounts of marijuana, a roach clip, and additional empty baggies. They also found a handgun clip.

[¶ 3] In the supporting affidavit, Officer Hanson alleged he executed a search warrant at a hotel room on June 1, 2002, that was registered to Utvick and one other person. According to Officer Hanson, Utvick and five other people were present when he searched the room and they attempted to dispose of contraband when Officer Hanson knocked and announced his presence. The search revealed a handgun and two separate amounts of methamphetamine, totaling approximately seven grams. A person not registered to the room was charged with possession of the methamphetamine. Officer Hanson also alleged Utvick and two others were listed as suspects in an aggravated assault at a Fargo hotel on June 6, 2002. The victim of the assault was referred to as a "drug informant." Police searched a hotel room registered to one of the suspects and found marijuana and a scale.

[¶ 4] A magistrate approved Officer Hanson's application on July 8, 2002. Officer Hanson was granted the search warrant with a provision authorizing him to enter without knocking and announcing his presence. Utvick was arrested on July 8, 2002, after Officer Hanson executed the no-knock search warrant and found marijuana and drug paraphernalia in Utvick's hotel room. The contraband was seized. Utvick was charged with possession of a controlled substance with intent to deliver, possession of drug paraphernalia, possession of one half to one ounce of marijuana, and possession of marijuana paraphernalia.

[¶ 5] Utvick moved to suppress the seized contraband as evidence, arguing issuance of the search warrant and the no-knock provision violated his right against an unreasonable search and seizure. Utvick argued the warrant was issued without probable cause. The trial court granted the motion, finding no probable cause existed for the no-knock provision of the search warrant but declined to address whether probable cause existed for the underlying search warrant. The trial court concluded the good-faith exception to the exclusionary rule did not apply because probable cause was so lacking that it was entirely unreasonable for a law enforcement officer to reasonably believe it existed. The State appealed.

II

[¶ 6] Probable cause is required for a search warrant under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution. *State v. Thieling*, 2000 ND 106, ¶ 7, 611 N.W.2d 861. "Probable cause to search exists 'if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched.'" *Id.* (quoting *State v. Johnson*, 531 N.W.2d 275, 278 (N.D.1995)). "The task of the issuing magistrate is to make a practical, commonsense decision whether, given all the information considered together, there is a fair probability contraband or evidence of a crime will be found in a particular place." *State v. Rydberg*, 519 N.W.2d 306, 308 (N.D.1994).

[¶ 7] "Whether probable cause exists to issue a search warrant is a ques-

tion of law." *Thieling*, 2000 ND 106, ¶ 8, 611 N.W.2d 861. Questions of law are fully reviewable. *State v. Wanzek*, 1999 ND 163, ¶ 5, 598 N.W.2d 811. On appeal, we review the sufficiency of information before the magistrate independent of the trial court's decision and use the totality-of-the-circumstances test. *Rydberg*, 519 N.W.2d at 308.

> "Although each bit of information ..., by itself, may not be enough to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers ... which is not weighed in individual layers but in the "laminated" total.' "

*State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912 (citations omitted). We generally defer to a magistrate's determination of probable cause if there was a substantial basis for the conclusion, and doubtful or marginal cases should be resolved in favor of the magistrate's determination. *State v. Ballweg*, 2003 ND 153, ¶ 12, 670 N.W.2d 490 (relying on *Damron*, 1998 ND 71, ¶ 6, 575 N.W.2d 912). We also defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. *State v. Haverluk*, 2000 ND 178, ¶ 7, 617 N.W.2d 652.

■ [¶ 8] Utvick argues the information presented to the magistrate did not support a finding of probable cause. He states the information presented to the magistrate is conclusory and lacks any reasonable specificity as to Utvick's alleged

criminal activity. Utvick also argues the information presented to the magistrate was stale. We find it necessary to address this issue, even though the trial court failed to rule on whether probable cause existed for the search warrant.

[¶ 9] Officer Hanson noted in his affidavit that, in the previous two months, Utvick had twice been the registered guest of a hotel room where drugs, paraphernalia, and weaponry were found.[1] The magistrate was also presented with information that Utvick was a suspect in the aggravated assault of an alleged drug informant at another hotel. After the assault, police found marijuana and a scale in one of the other suspect's hotel room. According to the affidavit, Utvick was the registered guest of the hotel room on July 8, 2002.

[¶ 10] The magistrate was also presented with information that hotel employees observed the odor of marijuana emanating from Utvick's hotel room, and Officer Hanson later independently investigated and confirmed their observations. Utvick argues the odor of marijuana was the only reasonable evidence presented to the magistrate that indicated Utvick may have been presently breaking the law. Utvick contends the hotel staff member could not tell if the odor was marijuana, leaving only Officer Hanson's allegation that marijuana was emanating from the hotel room. We have said a citizen informant is " 'someone who volunteer[s] information, [does] not want anything in return for the information, and [is] not at risk or in fear of going

---

1. The May 2002 search occurred after Utvick had checked out of his room. Regardless, the drug evidence is compelling and supports a finding of probable cause under the totality of the circumstances. We note a similar case in which the defendant vacated the hotel room, officials found residue of cocaine and a hypodermic syringe, and the defendant returned several days later and re-registered to the same room. An appellate court determined, under the totality of the circumstances, the magistrate properly concluded probable cause existed and the information was not stale. *State v. Keller*, 870 S.W.2d 255 (Mo.Ct.App. 1994).

to jail.' " *State v. Roth,* 2004 ND 23, ¶ 10, 674 N.W.2d 495 (quoting *State v. Rangeloff,* 1998 ND 135, ¶ 4, n. 3, 580 N.W.2d 593). We have presumed the reliability of citizen informants and said their reliability should be evaluated from the nature of their opportunity to observe and the extent to which it can be verified by independent investigation. *State v. Hage,* 1997 ND 175, ¶ 16, 568 N.W.2d 741. *See also State v. Roth,* 2004 ND 23, ¶¶ 9–12, 674 N.W.2d 495 (explaining the differences among the three recognized types of informants, including the variations in presumed reliability of each type). In addition, even if Officer Hanson was the only person able to identify the odor, " 'the courts must take into account inferences and deductions that a trained and experienced officer makes.' " *State v. Guthmiller,* 2002 ND 116, ¶ 15, 646 N.W.2d 724 (quoting *State v. Olson,* 1998 ND 41, ¶ 24, 575 N.W.2d 649).

[¶ 11] We do not address whether the odor of marijuana alone provides probable cause for a search warrant. Here, the odor of marijuana was only one piece of information presented to the magistrate. "Although each piece of information may not alone be sufficient to establish probable cause and some of the information may have an innocent explanation, 'probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers.' " *Thieling,* 2000 ND 106, ¶ 7, 611 N.W.2d 861 (quoting *Damron,* 1998 ND 71, ¶ 7, 575 N.W.2d 912).

[¶ 12] We disagree with Utvick's contention that the affidavit provided speculative information and conclusory statements. Officer Hanson's affidavit contained reasonable specificity with regard to Utvick's alleged involvement in criminal activity, particularly drug use and trafficking. Even though some of the information was more than one month old, staleness is determined after reviewing the particular facts of each case, and "passage of time may be unimportant to the validity of probable cause when the course of conduct is of a protracted or continuous nature." *Damron,* 1998 ND 71, ¶ 17, 575 N.W.2d 912 (citing *Johnson,* 531 N.W.2d at 278). "Protracted and continuous activity is inherent in drug trafficking." *State v. Ringquist,* 433 N.W.2d 207, 214 (N.D. 1988). "Drug use can also be a habituating and continuing offense." *Hage,* 1997 ND 175, ¶ 13, 568 N.W.2d 741.

[¶ 13] Under the totality of the circumstances, the evidence presented to the magistrate establishes there was probable cause to warrant that a person of reasonable caution would believe evidence of drug use and trafficking would be found in Utvick's hotel room. As such, there was a substantial basis for the magistrate's conclusion that probable cause existed to search Utvick's hotel room.

### III

[¶ 14] The State argues Officer Hanson's affidavit establishes the requisite level of probable cause that evidence would be destroyed if law enforcement was required to knock and announce their presence prior to entering the hotel room.[2] Specifically, the State contends Officer Hanson articulated a particularized suspicion drugs would be disposed of or destroyed if law enforcement's presence was announced. Therefore, the State argues the trial court erred in concluding probable cause did not exist to support the no-knock authorization.

---

2. The State does not argue exigent circumstances existed to justify a no-knock search warrant based on the likelihood of danger to law enforcement.

[¶ 15] The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the North Dakota Constitution require all searches and seizures be reasonable. Therefore, officers must knock and announce their presence before entering a dwelling. *State v. Herrick* (*"Herrick I"*), 1997 ND 155, ¶ 17, 567 N.W.2d 336 (citing *Wilson v. Arkansas,* 514 U.S. 927, 934, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)). However, the reasonableness requirement is flexible and countervailing law enforcement interests may warrant dispensing with the knock and announce requirement before entry. *Herrick I*, at ¶ 17. Officers may validly enter without knocking and announcing their presence if a threat of physical violence or possible destruction of evidence exists. *Id.*

[¶ 16] Before the knock and announce requirement may be dispensed, exigent circumstances must exist to justify the unannounced entry. *See Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997).

> [T]he police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

*Id.* at 394, 117 S.Ct. 1416.

[¶ 17] While the United States Constitution requires reasonable suspicion be demonstrated to justify a no-knock entry, North Dakota affords its citizens greater protection. Probable cause must be demonstrated before a no-knock search warrant may be issued. N.D.C.C. § 19–03.1–32(3). No-knock search warrants are authorized under N.D.C.C. § 19–03.1–32(3), which provides:

> Any officer authorized to execute a search warrant, without notice of the officer's authority and purpose, may break open an outer or inner door or window of a building, or any part of the building, or anything therein, if the judge or magistrate issuing the warrant has probable cause to believe that if such notice were to be given the property sought in the case may be easily and quickly destroyed or disposed of, or that danger to the life or limb of the officer or another may result, and has included in the warrant a direction that the officer executing it is not required to give such notice.

[¶ 18] Probable cause determinations must be made after reviewing the facts presented in a particular case. *State v. Van Beek,* 1999 ND 53, ¶ 15, 591 N.W.2d 112. It is no longer sufficient to merely allege drugs are present to justify issuance of a no-knock warrant. *Herrick I,* 1997 ND 155, ¶ 21, 567 N.W.2d 336 (overruling per se rule permitting no-knock warrant in all drug case). "[P]robable cause is not established for a no-knock search warrant where the reviewing court is given information indicating nothing more than probable cause [that] an easily disposable drug is located in a suspect's residence." *Van Beek,* at ¶ 21.

[¶ 19] When potential destruction of evidence is the alleged exigent circumstance, officers must provide some particularized basis for their suspicion. *See Herrick I,* 1997 ND 155, ¶ 23, 567 N.W.2d 336 (stating no evidence was presented, other than the possible existence of drugs and an explained belief defendant would dispose of evidence if forewarned); *cf. State v. Jones,* 358 N.J.Super. 420, 818 A.2d 392 (2003) (observing "[p]olice must articulate some reason that the destruction of evidence is more than a hypothetical possibility"). In *Richards,* the United States Supreme Court held, "[when] police could know the drugs being searched for

were of a type or in a location that made them impossible to destroy quickly ... asserted governmental interest in preserving evidence and maintaining safety may not outweigh individual privacy interests intruded upon by a no-knock entry." *Richards v. Wisconsin*, 520 U.S. 385, 393, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). We have previously indicated a particularized basis was not demonstrated when officers failed to demonstrate the suspects' ability to destroy the evidence. *Van Beek*, 1999 ND 53, ¶ 18, 591 N.W.2d 112. In *Van Beek*, we noted that, when drugs are kept in a garage, the proposition drugs will be destroyed is even more doubtful. *Id.*

[¶ 20] The search warrant was issued for Utvick's hotel room. The layout of a hotel room may have made it particularly easy for a suspect to destroy evidence, given the probable location of the bathroom. *See Michigan v. Hall*, 1999 Mich. App. LEXIS 651, 4 *unpublished* (holding exigent circumstances existed because bathroom in hotel room was next to hallway door where the narcotics could have been particularly flushed, and the suspected drug was crack-cocaine, which makes it not impossible that drugs were easily disposable); *see also Wisconsin v. Henderson*, 245 Wis.2d 345, 629 N.W.2d 613, 623 (2001) (holding exigent circumstances demonstrated because officers knew defendant stored drugs in room across from the bathroom, making destruction particularly easy); *United States v. Johnson*, 267 F.3d 498, 501 (6th Cir. 2001) (holding exigent circumstances found because detailed affidavit alleged drug transactions were conducted near the bathroom for quick disposal of the evidence). However, such circumstances were not shown in this case. There is no indication Officer Hanson alleged the location of the drugs in the hotel room contributed to easy disposal, creating an exigent circumstance. The bathroom may have

been readily accessible, but we cannot make such an assumption if the information is not in the supporting affidavit. Because Officer Hanson did not present this information to the magistrate, the magistrate could not have relied on it when making the probable cause determination for the no-knock authorization.

[¶ 21] In the search warrant application, Officer Hanson sought methamphetamine and marijuana. Officer Hanson's supporting affidavit failed to present any allegations stating the drugs sought were of a type considered easily disposable. Merely alleging the presence of marijuana and methamphetamine does not allow one to infer the drugs were easily disposable. In *Herrick I*, the officer's affidavit supporting the search warrant application stated marijuana is easily disposable. *Herrick I*, 1997 ND 155, ¶ 23, 567 N.W.2d 336. In *Van Beek*, 1999 ND 53, ¶ 17, 591 N.W.2d 112, the affidavit stated methamphetamine could be easily disposable, and the methamphetamine sought was suspected to be packed primarily in user amounts, which are small. In each of these cases, the Court refused to find probable cause for the no-knock authorization, noting the allegations were not sufficiently particularized. *See Herrick I*, 1997 ND 155, 567 N.W.2d 336; *Van Beek*, 1999 ND 53, 591 N.W.2d 112.

[¶ 22] In this instance, it is not even a matter of sufficiency of particularized information in the affidavit. No particularized facts whatsoever were presented regarding the fact that the drugs were easily disposable. While it could be true that methamphetamine and marijuana are easily disposable, it could also be true that the drugs were of such an amount or in such a location to make them difficult to dispose of quickly. Large quantities of drugs or unprocessed marijuana may not be condu-

cive to simply pitching aside or flushing, which Officer Hanson stated could occur if the no-knock authorization was not given. The magistrate was not presented with any information stating the drugs were of such a nature making them easily disposable or easily pitched aside. Therefore, the magistrate could not have relied on such information when making the probable cause determination.

[¶ 23] When Utvick's room was searched on June 1, 2002, the officer observed persons in the room attempting to dispose of drugs by flushing in the bathroom, after executing a search warrant without a no-knock provision. While Utvick is not alleged to have engaged in this activity, Utvick was the registered guest of the hotel room and was in the company of persons suspected of disposing of evidence. Prior history of destruction of evidence, when detailed in an affidavit for a no-knock search warrant, is not a threshold requirement but may strengthen probable cause to believe evidence will be destroyed. *Cf. Mazepink v. Arkansas*, 336 Ark. 171, 987 S.W.2d 648, 655 (1999) (holding no-knock search warrant unreasonable because no exigent circumstances existed and noting, "[m]oreover, there was no evidence ... the occupants may have attempted to destroy the evidence ... by flushing it down the toilet"); *Henderson*, 629 N.W.2d at 624 (holding defendant's argument he had not destroyed drugs in the past was a weak argument and history of evidence destruction is not a threshold requirement).

[¶ 24] Officer Hanson may have reasonably believed Utvick might destroy the drug evidence if he knocked and announced his presence. However, that belief does not constitute an exigent circumstance, in light of Officer Hanson's failure to allege the drugs were of a type or in such a location making disposal easy.

Merely demonstrating a predisposition to destroy evidence, based on one prior instance, without more, cannot be said to be particularized information warranting a no-knock authorization. "We consider all information for probable cause together, not in a piecemeal manner...." *Hage*, 1997 ND 175, ¶ 11, 568 N.W.2d 741 (citing *State v. Birk*, 484 N.W.2d 834, 837 (N.D. 1992)).

[¶ 25] The State argues Officer Hanson did more than merely submit speculation that drugs could be easily disposed of. We disagree. Under the totality of the circumstances, the allegations set forth in Officer Hanson's affidavit were insufficient to create an exigent circumstance justifying issuance of the no-knock authorization. The supporting affidavit did not contain information regarding Utvick's ability to destroy evidence nor was there any information regarding the ease with which any evidence may have been destroyed. Aside from recounting of prior incidents involving Utvick, very little of the affidavit was devoted to Officer Hanson's belief drugs would be destroyed. The supporting affidavit stated, "your Affiant is aware that Ryan Utvick is usually accompanied by a group of people inside motel rooms and if Law Enforcement would have to knock and announce their presence, those people could pitch their illegal drugs aside or flush potential evidence down a sink or toilet. Your Affiant has seen this on other search warrants and did see this happen ... on June 1, 2002 where Ryan Utvick was listed on the room registration card." There was no particularized information supporting Officer Hanson's belief evidence would be destroyed if law enforcement was required to knock. There was no substantial basis for the magistrate's conclusion that probable cause existed for the no-knock authorization. The no-knock

authorization was issued in violation of N.D.C.C. § 19–03.1–32(3).

## IV

[¶ 26] Generally, the appropriate remedy for searches conducted in violation of the Fourth Amendment to the United States Constitution is suppression of the illegally-obtained evidence, under the exclusionary rule. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The federal exclusionary rule was extended to state courts, prohibiting admission of evidence obtained in violation of the Fourth Amendment, through the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Under the good-faith exception to the federal exclusionary rule, suppression is not the appropriate remedy if the police reliance on the search warrant was objectively reasonable. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, there are four situations when the good-faith exception does not apply because the officer's reliance "on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues" is not objectively reasonable. *Id.* at 922, 104 S.Ct. 3405. This Court has summarized those four situations as:

> (1) when the issuing magistrate was misled by false information intentionally or negligently given by the affiant; (2) when the magistrate totally abandoned her judicial role and failed to act in a neutral and detached manner; (3) when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when a reasonable law enforcement officer could not rely on a facially deficient warrant."

*State v. Dodson,* 2003 ND 187, ¶ 20, 671 N.W.2d 825 (citing *State v. Herrick ("Herrick II")*, 1999 ND 1, ¶ 15, 588 N.W.2d 847 (citing *Leon,* at 923, 104 S.Ct. 3405)). "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon,* at 916, 104 S.Ct. 3405. Thus, if there is no police misconduct to deter, the good-faith exception must apply and suppression is not the appropriate remedy.

[¶ 27] This Court has previously held the North Dakota Legislative Assembly did not set forth a remedy when enacting N.D.C.C. § 19–03.1–32(3). *Herrick II,* 1999 ND 1, ¶ 10, 588 N.W.2d 847. This Court also held the statute implicated substantive constitutional rights, particularly the right to be free from unreasonable searches and seizures, under the Fourth Amendment. *Herrick II,* at ¶ 10. Because a violation of the statute is tantamount to a violation of the Fourth Amendment, we must apply the federal exclusionary rule to violations under N.D.C.C. § 19–03.1–32(3). *Herrick II,* at ¶ 12.

[¶ 28] While the good-faith exception has only previously been applied when a search warrant was issued on a per se basis, in violation of N.D.C.C. § 19–03.1–32(3), prior to *Herrick I,* 1997 ND 155, 567 N.W.2d 336, the good-faith exception must be considered regardless of whether the search warrant was issued under such conditions. Any violation of N.D.C.C. § 19–03.1–32(3) implicates substantive constitutional rights under both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the North Dakota Constitution. While we have noted our state constitution may provide greater protections than the Fourth Amendment, we "do not decide . . . whether such enlightened protection would preclude a good-faith exception to North Dakota's exclusionary rule." *Herrick II,*

at ¶ 27. Here, federal precedent controls because a state constitutional argument was not properly raised and briefed. *See Dodson*, 2003 ND 187, ¶ 21, 671 N.W.2d 825 (citing *State v. Hughes*, 1999 ND 24, ¶ 5, 589 N.W.2d 912). The United States Supreme Court has stated a state " 'may not impose such greater restrictions as a matter of federal constitutional law when this Court specifically refrains from imposing them.' " *Dodson*, 2003 ND 187, ¶ 22, 671 N.W.2d 825 (quoting *Arkansas v. Sullivan*, 532 U.S. 769, 772, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001)). As such:

> "[W]e are required to apply the good faith exception to the exclusionary rule under the Fourth Amendment when evaluating a federal constitutional claim because, if we do not, we will be imposing greater restrictions on police activity when the United States Supreme Court specifically refrained from doing so in *Leon*.
>
> We are also required to apply the good-faith exception to the exclusionary rule under the Fourth Amendment in the same manner as the federal courts apply it."

*Dodson*, at ¶¶ 22–23. Therefore, while a violation of N.D.C.C. § 19–03.1–32(3) generally requires suppression as the appropriate remedy, because of Fourth Amendment concerns, we must consider whether the good-faith exception should apply in this case.

[¶ 29] The trial court refused to apply the good-faith exception because "police officers should know of the 1999 North Dakota Supreme Court cases that explain to officers that they cannot use the mere presence of drugs to justify a no-knock warrant." The trial court then found that a reasonably well-trained officer would know that this search was illegal despite the magistrate's authorization.

[¶ 30] We have previously applied the federal good-faith exception to no-knock warrants issued on a per-se basis, in violation of N.D.C.C. § 19–03.1–32(3), prior to *Herrick I*, 1997 ND 155, 567 N.W.2d 336, because "law enforcement had indicia of probable cause, indicia supplied by our prior cases approving a per-se rule for no-knock warrants in drug cases." *Van Beek*, 1999 ND 53, ¶ 26, 591 N.W.2d 112. While the good-faith exception appears to automatically apply to cases prior to *Herrick I*, we have never said trial courts are precluded from applying the good-faith exception to search warrants issued on a per se basis after *Herrick I*.

[¶ 31] The trial court concluded the no-knock provision of the search warrant was issued on a per se basis. Black's Law Dictionary defines "per se" as "as a matter of law." *Black's Law Dictionary* 1162 (7th ed.1999). While we defer to the trial court's findings of fact, "[w]hether findings of fact meet a legal standard is a question of law. While we do not conduct a de novo review of the findings of fact, questions of law are fully reviewable." *State v. Kitchen*, 1997 ND 241, ¶ 12, 572 N.W.2d 106 (citation omitted). Whether the trial court properly determined the search warrant was issued on a per se basis will be reviewed de novo in light of the trial court's findings of fact.

[¶ 32] In this case, we have concluded the information provided in the affidavit did not rise to the level of establishing probable cause for the magistrate to issue the no-knock provision of the search warrant. However, the record and the trial court's findings of fact do not support the trial court's legal conclusion that, based on its findings of fact, the magistrate issued the no-knock provision of the search warrant on a per se basis, in violation of state and federal law. Officer Hanson did more than merely allege drugs

were present to justify issuance of a no-knock warrant. *See Herrick I,* 1997 ND 155, ¶ 21, 567 N.W.2d 336. Officer Hanson presented some particularized information to the magistrate regarding Utvick's prior flushing history, in addition to his belief drugs would be found in the hotel room. While this information does not give rise to existence of probable cause for issuance of the no-knock warrant, it is sufficiently particularized to rebut any legal conclusion that the warrant was issued on a per se basis.

[¶ 33] We reiterate the standard that must be met before the good-faith exception will not apply. The warrant must be based on an affidavit " 'so lacking in indicia of probable cause as to render official belief in its existence *entirely* unreasonable.' " *Dodson,* 2003 ND 187, ¶ 20, 671 N.W.2d 825 (quoting *Herrick II,* 1999 ND 1, ¶ 15, 588 N.W.2d 847) (citing *Leon,* at 923, 104 S.Ct. 3405) (emphasis added). The sum total of the information provided in the affidavit was not so lacking in indicia of probable cause that Officer Hanson could not have reasonably relied on the issuing magistrate's determination. *See Dodson,* at ¶ 27 (citing *United States v. Carpenter,* 341 F.3d 666, 671 (8th Cir.2003) ("It is sufficient to note that [the defendant] raises a close question concerning a legal deficiency. On such issues, officers may reasonably rely on the judgment of the issuing magistrate."). We do not find Officer Hanson's reliance on the warrant, issued by a neutral and detached magistrate, to be so egregious that it could be deemed "entirely unreasonable." The objective of the exceptions to the good-faith exception is to deter police misconduct. That objective will not be served by excluding the illegally obtained evidence in this case.

### VII

[¶ 34] Because the trial court erred in determining the good-faith exception to the exclusionary rule did not apply and improperly granted Utvick's motion to suppress evidence, we reverse and remand.

[¶ 35] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ., concur.

SANDSTROM, Justice, concurring specially.

[¶ 36] Although I believe the majority continues to misanalyze the requirements for a no-knock search, *see, e.g., State v. Van Beek,* 1999 ND 53, ¶¶ 29–31, 591 N.W.2d 112 (Sandstrom, J., concurring specially), I agree with the majority that if there was not probable cause for a no-knock search, the good-faith exception applies.

[¶ 37] Dale Sandstrom

MARING, Justice, concurring in part and dissenting in part.

[¶ 38] I respectfully dissent and would affirm the district court order granting Utvick's motion to suppress. Although I agree with the majority that there was probable cause to obtain a search warrant for Utvick's motel room and that there was no probable cause for a no-knock warrant, I disagree with the majority that the good-faith exception applies. Instead, I agree with the well-reasoned decision of District Court Judge Norman Backes that the good-faith exception does not apply to the facts of this case.

[¶ 39] The United States Constitution requires only reasonable suspicion to justify a no-knock warrant, but North Dakota requires that probable cause be established before a no-knock warrant can be granted. N.D.C.C. § 19–03.1–32(3); *Richards v. Wisconsin,* 520 U.S. 385, 394, 117

S.Ct. 1416, 137 L.Ed.2d 615 (1997). The majority opinion concludes that the search in the instant case was unreasonable because there was no probable cause under N.D.C.C. § 19–03.1–32(3) for the issuance of the no-knock warrant.

[¶ 40] Our Court, in *State v. Van Beek,* stated:

> The federal good faith exception originated from the landmark case *United States v. Leon,* 468 U.S. 897, 923[,] [104 S.Ct. 3405, 82 L.Ed.2d 677] (1984). The good faith inquiry is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* [at 922–23] n. 23[,] [104 S.Ct. 3405]. An officer may not always reasonably rely on the validity of a search warrant issued by a magistrate, however, and *Leon* identified four exceptions when this is the case. *Id.* at 923[,] [104 S.Ct. 3405]. Under the third exception, which Van Beek argues applies here, the good faith exception will not apply when the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.*

1999 ND 53, ¶ 25, 591 N.W.2d 112. I am of the opinion that this case falls under the third exception to the good-faith exception; therefore, the good-faith exception cannot apply in this case.

[¶ 41] In *Richards,* decided in April 1997, the United States Supreme Court held that "[i]n order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." 520 U.S. at 394, 117 S.Ct. 1416. The United States Supreme Court made it clear that it is the duty of a court confronted with whether the facts justify dispensing with the knock-and-announce requirement of the Fourth Amendment to do so on a case-by-case evaluation. *Id.* A blanket exception to the knock-and-announce rule for drug cases based on the generalization that there was a threat of physical violence and that the evidence would likely be destroyed if notice was given, was soundly rejected by the United States Supreme Court. *Id.; see State v. Herrick,* 1997 ND 155, ¶ 21, 567 N.W.2d 336 (overruling our per-se rule in drug cases justifying the issuance of no-knock search warrants). We have stated:

> Probable cause for a no-knock warrant, therefore, can no longer be established merely because of the presence of drugs in a suspect's residence. [*Herrick,* at ¶ 21] ("[m]ere allegations that drugs are present" will no longer "result in the issuance of a no-knock warrant").

*Van Beek,* 1999 ND 53, ¶ 15, 591 N.W.2d 112. Our Court has concluded that in order "[t]o pass constitutional muster, officers must have some particularized basis for their suspicion drugs will be disposed of or destroyed if their presence is announced." *Id.* at ¶ 21 (footnote omitted); *see also* 2 Wayne R. LaFave, *Search and Seizure* § 4.8(d), 615 n. 86 (3d ed.1996) (citing cases requiring particularized facts relating to the defendant in order to justify a no-knock entry).

[¶ 42] In the instant case, the majority carefully reviews the facts presented to the magistrate for the no-knock warrant. The no-knock search warrant was for Utvick's motel room, but the majority states, "[t]here is no indication Officer Hanson alleged the location of the drugs in the hotel room contributed to easy disposal." Officer Hanson did not provide any information in his affidavit of the layout of the

motel room or the location in the room of the drugs. The majority states that the "affidavit failed to present any allegations stating the drugs sought were of a type considered easily disposable. Merely alleging the presence of marijuana and methamphetamine does not allow one to infer the drugs were easily disposable." The officer states in his affidavit he smelled marijuana coming from the door jam of Utvick's room. There is no evidence that there was methamphetamine in the motel room. The majority opinion concludes, "[t]he magistrate was not presented with any information stating the drugs were of such a nature making them easily disposable or easily pitched aside. Therefore, the magistrate could not have relied on such information when making the probable cause determination."

[¶ 43] However, in concluding that the good-faith exception applies, the majority states, "Officer Hanson did more than merely allege drugs were present to justify issuance of a no-knock warrant[,]" because he presented information "regarding Utvick's prior flushing history." (Citation omitted.) Officer Hanson's affidavit states:

> In addition your Affiant is aware that Ryan Utvick is usually accompanied by a group of people inside motel rooms and if Law Enforcement would have to knock and announce their presence, those people could pitch their illegal drugs aside or flush potential evidence down a sink or toilet. Your Affiant has seen this on other search warrants and did see this happen when the warrant was served at the Super 8 Motel on June 1st, 2002 where Ryan Utvick was listed on the room registration card.

The incident referred to in Officer Hanson's affidavit involved a search warrant at a motel room where Utvick was found with five other people on June 1, 2002. Ap-

proximately seven grams of methamphetamine were seized, and Rory Kendall was charged with possession of methamphetamine. The affidavit does not state that Utvick possessed drugs, that he flushed drugs down a toilet, or that he poured drugs down a sink. The affidavit merely states that one month ago, Utvick was in a motel room that was searched and others attempted to destroy evidence. Even if this information suggests Utvick's predisposition to destroy evidence, standing alone, it is not sufficient to obtain a no-knock warrant. In the instant case, we do not have any particularized facts or even an estimation of the quantity of the drugs, the location of the drugs, or the layout of the motel room.

[¶ 44] The search warrant issued by the magistrate indicates that there is probable cause to believe the property described is being concealed at the premises described, Utvick's motel room, but the magistrate never addresses that there is probable cause for the no-knock entry other than to check "yes" to authorizing the search without knocking-and-announcing. "The basis of the good faith exception is that if an officer reasonably relies on a warrant in good faith, there is no police misconduct to deter." *State v. Dodson*, 2003 ND 187, ¶ 20, 671 N.W.2d 825 (citing *Leon*, 468 U.S. at 916, 104 S.Ct. 3405). In the instant case, where there are no particularized facts indicating why evidence would be destroyed in this particular search if officers announced their presence and where there appears to be a rubber stamp for the no-knock warrant by the magistrate, the good-faith exception cannot apply. The shortcomings of the affidavit are of a magnitude that make the officer's reliance "entirely unreasonable." In *Leon*, the United States Supreme Court held that where a warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable[,]' " an officer cannot "manifest objective good faith in relying on [the] warrant." *Leon*, at 923, 104 S.Ct. 3405 (citations omitted). The cumulative effect of the numerous deficiencies in this affidavit are sufficient to render Officer Hanson's belief in the existence of probable cause for a no-knock warrant unreasonable.

[¶ 45] Probable cause, here, means that the facts and circumstances would warrant a person of reasonable caution to believe the evidence or contraband sought probably will be destroyed. Under this standard, I am of the opinion such an inference cannot be drawn without a factual basis and there is none in this case.

[¶ 46] Finally, I agree with Robert J. Driscol in *Unannounced Police Entries and Destruction of Evidence After Wilson v. Arkansas,* that in the context of destruction of evidence, "[a] requirement of announcement prior to entry neither provides a great barrier to effective searches nor affords criminals an extensive opportunity to destroy evidence, because the time that police are required to wait between announcement, refusal of admittance, and entry is usually minuscule." 29 Colum. J.L. & Soc. Probs. 1, *29–30 (1995) (footnote omitted). Recently, in *United States v. Banks,* the United States Supreme Court held that when executing a warrant to search for cocaine, a wait of 15–to–20-seconds after knocking on the door with no response was sufficient to proceed with a forced entry. —— U.S. ——, 124 S.Ct. 521, 523, 157 L.Ed.2d 343 (2003). Given the limited opportunity for destruction of evidence that knock-and-announce warrants create, the possibility of destruction of evidence provides a weak basis for departure from the Fourth Amendment knock-and-announce requirement. There is, in my opinion, no justification for a broad con-

struction of the good-faith exception for destruction of evidence.

[¶ 47] For these reasons, I respectfully dissent. I would affirm the trial court.

[¶ 48] Mary Muehlen Maring