(98 P.3d 985)
No. 90,959

STATE OF KANSAS, *Appellee,* v. LARRY A. CREASON, *Appellant.*

Opinion filed October 8, 2004.

*Matthew J. Edge,* assistant appellate defender, for appellant.

*James R. Watts,* assistant county attorney, and *Phill Kline,* attorney general, for appellee.

Before MARQUARDT, P.J., HILL and MCANANY, JJ.

MARQUARDT, J.: Larry A. Creason appeals his convictions for one count each of possession of marijuana with intent to sell and criminal possession of a firearm, as well as the trial court's denial of his motion to suppress evidence. We affirm in part and dismiss in part.

A confidential informant (CI) told Chief Robert Sage that he was present when Creason sold cocaine, Creason had "beat the shit" out of people who crossed him, and he claimed to have witnessed Creason beating someone over a "drug deal gone bad." Based on this report and some additional information, Sergeant Michael Unden initiated a background check of Creason, which revealed a prior conviction for aggravated battery. Police investigation of Creason's garbage revealed traces of cocaine and marijuana.

In July 2002, Sergeant Unden submitted an affidavit and application for a search warrant for Creason's home. In the affidavit, Sergeant Unden informed the trial court that Creason had prior arrests for burglary, theft, and aggravated battery. Sergeant Unden also included the information provided by the C.I. and requested permission to serve the warrant without knocking and announcing.

The trial court issued the warrant authorizing permission to execute the warrant without knocking and announcing. A handgun, rifle, plastic bags which contained white powder, drug paraphernalia, and a plastic bag containing a "green botanical substance" were found in the search.

Creason was charged with one count each of possession of marijuana with intent to sell, possession of methamphetamine with intent to sell, felony possession of drug paraphernalia, and criminal possession of a firearm. The count of possession of methamphetamine was later amended to possession of cocaine. Creason

promptly filed a motion to suppress, arguing that the police violated his constitutional rights by executing a no-knock warrant.

After a hearing, the trial court denied the motion to suppress. Creason agreed to proceed to trial on stipulated facts, and he was convicted of one count each of possession of marijuana with intent to sell and criminal possession of a firearm. He received a controlling sentence of 44 months' imprisonment. Creason timely appeals.

In ruling on Creason's motion to suppress, the trial court stated that the no-knock warrant was based on information provided by law enforcement officers. On appeal, Creason argues that the evidence presented to the trial court did not support a finding of circumstances sufficient to dispense with the knock and announce requirement. Creason argues that the State did not present any evidence that he possessed any weapons, or that he had made any statements indicating he would use violence to resist arrest.

The function of an appellate court is to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 747, 27 P.3d 1 (2001). An appellate court's review of conclusions of law is unlimited. *Lindsey v. Miami County National Bank*, 267 Kan. 685, 689-90, 984 P.2d 719 (1999).

Chief Sage testified that he neither investigated the veracity of the C.I.'s claims, nor ran a background check on the C.I. However, Chief Sage had previously encountered Creason while working a private security job and was aware that Creason was "associated with drug activity." In addition, while he was employed in private security, Chief Sage encountered Creason's girlfriend, who alleged that Creason beat her.

Sergeant Unden testified that he first made contact with Creason during a disturbance at a shopping mall, where Creason was involved in a fight. Sergeant Unden admitted that Creason appeared to be the victim in that altercation. A woman at the scene said that she believed the melee was "drug related." Sergeant Unden dis-

covered that another jurisdiction was conducting an ongoing investigation of Creason after a fistfight occurred at a tavern. Cocaine was allegedly found at the scene of that altercation.

It appears that one of the factors that influenced law enforcement to ask for the no-knock warrant was information from another officer regarding a traffic stop where in excess of 100 grams of cocaine, methamphetamine, and marijuana, as well as two loaded and stolen handguns, were found in a car heading to an address in Creason's neighborhood. However, there was no evidence that the driver was connected to Creason in any way.

In 1995, the United States Supreme Court held that when executing a search warrant, the common-law principle of announcement is always an element of the reasonableness inquiry under the Fourth Amendment. *Wilson v. Arkansas,* 514 U.S. 927, 931-37, 131 L. Ed. 2d 976, 115 S. Ct. 1914 (1995). In *Richards v. Wisconsin,* 520 U.S. 385, 391-95, 137 L. Ed. 2d 615, 117 S. Ct. 1416 (1997), the Supreme Court held that in order to justify a no-knock entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.

The Kansas Supreme Court, in evaluating the propriety of a no-knock warrant, ruled that officers are excused from the knock and announce rule when justified by exigent circumstances which will be deemed to exist only when the officers hold an objectively reasonable belief that an emergency situation exists. *State v. Shively,* 268 Kan. 589, 595, 999 P.2d 259 (2000).

In the instant case, it is undisputed that the police executed a no-knock warrant. Our only inquiry, then, is whether the entry was justified by exigent circumstances.

In *State v. Wakefield,* 267 Kan. 116, 977 P.2d 941 (1999), law enforcement officials were investigating a burglary and double homicide, and they had reason to believe that the defendant was involved. The officers knew that multiple firearms had been stolen during the incident, and they believed that the weapons were located inside the residence. Based on these findings, the Kansas

Supreme Court affirmed the trial court's decision that a no-knock warrant was justified. 267 Kan. at 131-32.

In *Shively*, the police obtained a search warrant based on information provided by a C.I. who had been cooperating with the authorities for less that 1 month, and had no convictions for dishonesty. The C.I. told the police that Shively was selling marijuana from his residence; however, he did not believe that Shively had any animals or weapons in his residence. The Kansas Supreme Court concluded that the facts did not support the existence of exigent circumstances to justify a no-knock entry. 268 Kan. at 596.

We understand that law enforcement officers are never quite sure what will materialize during the service of a search warrant; however, in this case, we do not believe the facts, as they existed at the time the search warrant was obtained, demonstrated the need for a no-knock warrant. The trial court erred by finding that there were sufficient exigent circumstances to justify a no-knock warrant.

In considering Creason's motion to suppress evidence, the trial court considered the good-faith criteria elucidated in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, *reh. denied* 468 U.S. 1250 (1984). On appeal, Creason urges this court to reject the application of that exception, which would result in the exclusion of the evidence seized during the service of the warrant. Creason argues that the police officers could not rely on the language of the warrant authorizing the no-knock entry, since Kansas law does not allow judges to decide before the fact what force will be reasonable in executing a search warrant.

Evidence seized in the execution of a warrant should be suppressed only in those unusual cases in which exclusion will further the purposes of the exclusionary rule. The good-faith exception in *Leon* provides that evidence should not be excluded unless (1) the magistrate who issued the warrant was deliberately misled by false information; (2) the magistrate completely abandoned his or her neutral and detached role; (3) the warrant is so lacking in specificity that the officers cannot determine the place of the search or the items to be seized; or (4) the warrant bears so little indicia of probable cause that it is entirely unreasonable for an officer to believe

that the warrant is valid. If none of the four circumstances exist and if an officer acts in good faith, then the evidence should be admitted. *State v. Jackson*, 30 Kan. App. 2d 288, 297, 41 P.3d 871 (2002).

There is no Kansas case that addresses whether the good-faith exception applies to an otherwise valid search warrant erroneously executed without an announcement. There are opinions on the issue from other jurisdictions.

In *State v. Utvick*, 675 N.W.2d 387 (N. D. 2004), authorities applied for a no-knock warrant to search the defendant's hotel room. The no-knock request was based on the presence of drugs and the "possibility" of gun possession. The magistrate approved the no-knock provision, the warrant was executed, and the defendant filed a motion to suppress.

Much like Kansas, North Dakota law allows officers to validly enter a structure without knocking and announcing their presence if a threat of physical violence or possible destruction of evidence exists. These threats must be justified by exigent circumstances. However, unlike Kansas, North Dakota requires that probable cause be demonstrated before a no-knock search warrant is issued. 675 N.W.2d at 394.

After considering the wisdom of applying the good-faith exception, the North Dakota court concluded that the information provided in the affidavit for search warrant did not rise to the level of establishing probable cause for the magistrate to issue the no-knock provision for the warrant. However, the court believed that the sum total of the information provided was not so lacking in indicia of probable cause so as to preclude application of the good-faith exception to the exclusionary rule. 675 N.W.2d at 399.

In *United States v. Gonzalez*, 164 F. Supp. 2d 119 (D. Mass. 2001), the authorities sought a no-knock warrant because the defendant might have destroyed evidence, the house had a "lengthy driveway" with windows facing the street, and the defendant owned a Rottweiler dog. The officers did not have any knowledge of weapons being stored at the address, and they did not expect to find any when serving the warrant.

The reviewing court concluded that the facts offered in the affidavit were insufficient to satisfy the constitutionally required prerequisites for an unannounced entry. In addressing the *Leon* exception, the court concluded that viewing all the information in the affidavit, the facts supporting unannounced entry were not so thin that reliance on the warrant was " 'entirely unreasonable.' " 164 F. Supp. 2d at 126.

Finally, the State cites *United States v. Scroggins*, 361 F.3d 1075 (8th Cir. 2004), where the defendant had a prior arrest for narcotics and weapons violations, and observation of his residence established repeated visits from known drug dealers. A search warrant authorizing a no-knock entry was issued. The trial court agreed with the defendant that the circumstances did not merit the issuance of a no-knock warrant. The only question before the Eighth Circuit was whether the good-faith exception to the exclusionary rule applied. 361 F.3d at 1078.

The Eighth Circuit concluded that the officer's reliance upon the no-knock provision was objectively reasonable and the officer was not required to question the magistrate's determination. The court further noted that the good-faith exception is "perfectly suited" for cases such as this, where the magistrate's decision was borderline. 361 F.3d at 1084.

We are convinced that the good-faith exception to the exclusionary rule may apply to the erroneous execution of a no-knock warrant in Kansas. We are most persuaded by the North Dakota Supreme Court's analysis in *Utvick*, given that state's similar history, and in light of its more stringent burden of proof. Frankly, we find Creason's argument difficult to follow. We do not believe that the absence of a statute allowing the issuance of a no-knock warrant or a common-law tradition of the same are relevant. Ultimately, the only question is whether there was no way that an officer could maintain a reasonable belief that a no-knock entry was permissible.

We conclude that the good-faith exception to the exclusionary rule in *Leon* applies to the facts of this case. Although it is a close call, we believe that there was sufficient evidence to support the officers' actions and the trial court's decision.

Creason waived his right to a preliminary hearing and submitted his case to the trial court on stipulated facts. The State did not prepare a separate stipulation of facts, but presented portions of the search warrant affidavit to the trial court. On appeal, Creason contends that because there was no "meeting of the minds" as to the content of the proposed stipulation, there was no stipulation before the court. Given that fact, Creason argues that the trial court did not have sufficient evidence on which to convict Creason.

After the State indicated that it had not prepared a new stipulation for trial purposes and proposed using portions of the affidavit, Creason's counsel responded, "That would be fine, Your Honor." Creason failed to lodge an objection to the perceived error. Issues not raised before the trial court cannot be raised on appeal. *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 268, 62 P.3d 247 (2003). Thus, this issue is dismissed.

We affirm the Creason's convictions as well as the trial court's denial of his motion to suppress evidence. We dismiss Creason's issue regarding the sufficiency of the evidence.

Affirmed in part and dismissed in part.